# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NICHOLAS GREEN, | ) |
|  | ) |
| Plaintiff, | ) |
| v. | ) |
|  | ) Civil Action No. 10-468 |
| MICHAEL J. ASTRUE, | ) Judge Donetta W. Ambrose |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |
|  | ) |
|  | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

### I. Synopsis

This matter comes before the Court on the parties' cross-motions for summary judgment, which have been filed pursuant to Federal Rule of Civil Procedure 56. Doc. Nos. 9 & 11. The Court has jurisdiction in this case pursuant to 42 U.S.C. § §405(g) and 1383(c)(3). For the reasons that follow, the Plaintiff's Motion for Summary Judgment (Doc. No. 9) will be denied, the Defendant's Motion for Summary Judgment (Doc. No. 11) will be granted, and the administrative decision of the Commissioner of Social Security will be affirmed.

### II. Procedural History

Plaintiff Nicholas Green ("Green") protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1382f] on September 14, 2007, and July 24, 2007, respectively. Record of *Green v. Astrue*, ("R.") at 46, 69. Green alleged disability since August 1, 2005, due to back disorders and an anxiety disorder. R. at 44, 46, 69,

72. The applications were administratively denied on December 21, 2007. R. at 44-46. Green responded on January 31, 2008, by filing a timely request for an administrative hearing. R. at 60. On May, 8, 2009, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Lamar Davis (the "ALJ"). R. at 19-43. Green, who was represented by a paralegal certified for direct payment of fees through the law office of Robert Pierce & Associates, appeared and testified. R. at 22-38. Testimony was also taken from George Sterosta, an impartial vocational expert (the "VE"). R. at 39-43.

In a decision dated June 17, 2009, the ALJ determined that Green was not "disabled" within the meaning of the Act. R. at 9-18. The Appeals Council denied Green's request for review on February 20, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1-3. Green commenced the present action in April 9, 2010, seeking judicial review of the Commissioner's decision. Doc. No. 1. Green and the Commissioner filed motions for summary judgment on September 2, 2010, and October 1, 2010, respectively. Doc. Nos. 9 & 11. These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal

quotation marks omitted). As long as the Commissioner's decision is supported by substantial

evidence, it cannot be set aside even if this Court "would have decided the factual inquiry

differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial

evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d

Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

determinable basis for an impairment that prevents him [or her] from engaging in any

'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of*

*Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777

(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be

unable to engage in substantial gainful activity "only if his [or her] physical or mental

impairment or impairments are of such severity that he [or she] is not only unable to do his [or

her] previous work but cannot, considering his [or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy." 42

U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than

simply state factual conclusions. He or she must make specific findings of fact. *Stewart v.*

*Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative

law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d

955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated

rule making authority, has promulgated a five-step sequential evaluation process for the purpose

of determining whether a claimant is "disabled" within the meaning of the Act. The United

States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will
> not review the claim further. At the first step, the agency will find non-disability
> unless the claimant shows that he is not working at a "substantial gainful
> activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find
> nondisability unless the claimant shows that he has a "severe impairment,"
> defined as "any impairment or combination of impairments which significantly
> limits [the claimant's] physical or mental ability to do basic work activities." §§
> 404.1520(c), 416.920(c). At step three, the agency determines whether the
> impairment which enabled the claimant to survive step two is on the list of
> impairments presumed severe enough to render one disabled; if so, the claimant
> qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the
> list, the inquiry proceeds to step four, at which the SSA assesses whether the
> claimant can do his previous work; unless he shows that he cannot, he is
> determined not to be disabled. If the claimant survives the fourth stage, the fifth,
> and final, step requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to determine whether
> the claimant is capable of performing other jobs existing in significant numbers in
> the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194

(1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law. That rule is to the effect that a reviewing court, in dealing with
> a determination or judgment which an administrative agency alone is authorized
> to make, must judge the propriety of such action solely by the grounds invoked by
> the agency. If those grounds are inadequate or improper, the court is powerless to
> affirm the administrative action by substituting what it considers to be a more
> adequate or proper basis. To do so would propel the court into the domain which
> Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. Discussion

In his decision, the ALJ determined that Green had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 11. Green was found to be suffering from degenerative disc disease, osteoarthritis with internal derangement of the knees, migraine headaches, unspecified depressive disorder, and social phobia. *Id.* Although these impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c), they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 11-13.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Green's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work. His ability to work at that exertional level is further limited by the inability to do more than incidental bending. He is limited to simple, routine, repetitive tasks where there are no changes in work processes. He cannot interact with the general public, either in person or on the [telephone]. He can only incidentally interact with coworkers.

R. at 13. Green was born on December 22, 1979, making him twenty-five years of age as of his alleged onset date and twenty-nine years of age as of the date of the ALJ's decision. R. at 16. He was classified as a "younger individual" under the Commissioner's regulations. R. at 16, 20 C.F.R. §§ 404.1563, 416.963. Green had a high school education and the ability to communicate in English. R. at 16, 20 C.F.R. §§ 404.1564, 416.964.

Given the applicable RFC and vocational assessments, the ALJ found that Green was unable to perform his past relevant work as a convenience store cashier and manager, fast food worker, night stocker, department store receiver, and water authority laborer because the positions entailed more than sedentary exertion and several involved direct public contact. R. at 16. Nevertheless, the ALJ concluded that Green could perform the requirements of the representative occupations of surveillance system monitor, mail sorter-addresser, and assembler. R. at 17. The VE's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). R. at 41-2.

In support of his motion for summary judgment, Green argues that the ALJ's decision is not supported by substantial evidence because the VE's testimony that a hypothetical person with his vocational background and RFC could perform the representative occupations of surveillance system monitor, mail sorter-addresser and assembler conflicts with the Dictionary of Occupational Titles ("DOT") and his RFC which limits him to "simple repetitive tasks." Doc. No. 10, 5-8. The Commissioner argues that the VE's testimony is consistent with the DOT, the Commissioner's regulations, and Green's RFC and therefore, that the ALJ's decision is supported by substantial evidence. Doc. No. 12, 5-13.

The claimant bears the ultimate burden of proving disability in Social Security disability cases. 42 U.S.C. §§ 423(d)(5)(A)(providing that "[a]n individual shall not be considered under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require."); 20 C.F.R. §§ 404.1512(a), 416.912(a). If the claimant satisfies his burden at step 4 and demonstrates that he is unable to return to his past relevant work, the burden of production shifts to the Commissioner at step 5 to show that other jobs exist in

significant numbers in the national economy that the claimant could perform. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

The VE or ALJ will often consult the DOT, a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); *See also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).

Here, the ALJ asked the VE to assume, that a hypothetical person with Green's age, education, and work history could perform sedentary work, but would be limited to simple, routine, repetitive tasks involving no change in work processes, no interaction with the general public, in person or on the telephone, and no more than incidental interaction with co-workers. R. at 40. In response, the VE testified based upon the DOT, that such a hypothetical person would be able to perform the representative occupations of surveillance system monitor, mail sort clerk or addresser, and assembler. R. at 41-42. The VE also testified that such occupations exist in significant numbers in the national economy. *Id.*

Green argues that the representative occupations identified by the VE conflict with the DOT because they exceed reasoning levels consistent with his RFC limiting him to simple, unskilled tasks[1]. (Doc. No. 10, 5-8). A level 1 reasoning level is defined as being able to "apply commonsense understanding to carry out simple one or two-step instructions [and] deal with

---

[1] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. §§ 404.1568(a), 416.968(a).

standardized situations with occasional or not variable in or from these situations encountered on the job." DOT, Appx. C: Components of the Definition Trailer. A level 2 reasoning level is characterized by the worker's ability to "apply commonsense understanding to carry out detailed but uninvolved oral instructions [and] deal with problems involving a few concrete variables in or from standardized situations." *Id.* Therefore, Green argues that occupations with a level 3 reasoning level "must require more complex abilities than performing detailed instructions, and certainly could not be performed by the claimant who is limited to simple unskilled tasks." Doc. No. 10, 6-7.

The occupation of surveillance system monitor is classified by the DOT as sedentary and unskilled with a specific vocational preparation ("SVP") of 2 and a reasoning level of 3[2]. DOT code 379.367-010. The DOT lists the maximum requirements of occupations as they are generally performed. Social Security Ruling ("SSR") 00-4p. Such criterion does not correspond to the range of requirements of a particular job as it is performed in a particular setting by a hypothetical individual with a specific vocational background. SSR 00-4p. Therefore, a VE may be able to testify to more specific requirements and information about jobs or occupations than the DOT. *Id.* Furthermore, to the extent that a reasoning level of 3 suggests mental demands beyond simple, repetitive, routine work, the reasoning level directly conflicts with the Commissioner's regulatory definition of unskilled work. *See* SSR 00-4p; 20 C.F.R. §§ 404.1548, 404.1521, 416.968, 416.921. Social Security Ruling 00-4p makes it clear that the Commissioner's regulatory definitions of skill levels are controlling. Therefore, it would be inconsistent with the Commissioner's regulations to rely on maximum reasoning levels as

---

[2] An SVP 2 indicates that "[a]nything beyond short demonstration up to and including one month" is needed to learn the job." DOT, Appx. C (Components of the Definition Trailer). An SVP of 1 or 2 is consistent with the Commissioner's definition of unskilled work.

defined by the DOT to argue that the mental demands of surveillance system monitor exceed those for simple unskilled work. 20 C.F.R. §§ 404.1598(a), 416.968(a).

Nevertheless, the VE identified sedentary representative occupations with reasoning levels of 1 and 2 which were consistent with the ALJ's RFC determination. R. at 41-42. The VE testified that a hypothetical person with Green's vocational background could perform the job of a "mail sort clerk or addresser[3]." R. at 42. According to the DOT, "addresser" has a sedentary exertional level with a SVP of 2 and a reasoning level of 2. DOT code 209.587-010. The VE also testified that the same hypothetical person could also work as an "assembler". There are several sedentary assembler jobs with reasoning levels of 1 or 2 and SVPs of 2, including "assembler" which is a sedentary occupation with an SVP of 2 and a reasoning level of 1. DOT code 734.687-010[4]. The representative occupations of addresser and assembler are consistent with Green's vocational background and RFC assessment.

The Commissioner's regulations state that work exists in the national economy when there are a significant number of jobs in one or more occupations which an individual can perform. 20 C.F.R. §§ 404.1566(b), 416.966(b). Thus, the Commissioner's burden of production at step five of the sequential evaluation process is to demonstrate that the claimant could perform work "in one or more occupations" which exist in significant numbers in either

---

[3] The VE did not cite the specific DOT code for the representative occupations he identified. R. at 41-42.

[4] Additional sedentary assembler jobs include: "final assembler" with an SVP of 2 and a reasoning level 1 (DOT code 713.687-018; "final assembler" which has an SVP of 2 and a reasoning level 1. The following assembler occupations are sedentary with SVPs of 2 and reasoning levels 2: "atomizer assembler" (DOT code 706.684-030); "dial-screw assembler" (DOT code 715.684-082"); "rotor assembler" (DOT code 715.687-114); "fishing-reel assembler" (DOT code 732.684-062); "slide-fastener-chain-assembler" (DOT code 734.687-074); "lamp shade assembler" (DOT code 739.684-094); and "compact assembler" (DOT 739.687-066).

the region he lived or in several regions of the country. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§ 404.1520(g), 416.920(g); *See also Wright v. Sullivan*, 900 F.2d 675, 679 (3d Cir. 1990) (the Commissioner's burden at step five is satisfied when he identifies at least one occupation in the national economy which the claimant can perform).

Here, the VE identified the representative occupations of mail sort clerk or addresser and assembler, both of which are sedentary and have a reasoning level of 2 or less. R. at 42. The United States Court of Appeals for the Third Circuit has recognized in an unpublished opinion that a reasoning level of 2 is consistent with the ability to perform simple, routine, and repetitive work. *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3d Cir. 2004). The VE testified that the representative occupations he identified existed in significant numbers in the national economy. R. at 41-42. Therefore, the Commissioner's burden of production at step five was met. 20 C.F.R. §§ 404.1566(b), 416.966(b).

Additionally, Green argues that "at the hearing level, it is part of the ALJ's duty . . . to inquire as to the consistency of the VE's testimony and the information given in the DOT." Doc. No. 10, 7. Indeed, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony. *Boone v. Barnhart*, 353 F.3d 203, 206 (3d Cir. 2004). Failure to do so may necessitate a remand. *Id.* Here, there were no material inconsistencies or conflicts between the DOT descriptions and the VE's testimony regarding a hypothetical person's (with Green's vocational background) ability to perform the representative occupations. At the hearing, the ALJ asked the VE if there was any conflict between how his testimony comported with the "criteria as contained in the Dictionary of Occupational Titles." R. at 42. The VE stated that his testimony was consistent with the DOT. *Id.* Therefore, the ALJ was entitled to rely upon the

10

VE's testimony. *See e.g. Gibbons v. Barnhart*, 85 Fed. Appx. 88 (10th Cir. 2003) ("The vocational expert specifically testified that the limitations of simple reading and writing were consistent with the alternative jobs he identified" and "once the VE stated that he was relying on the DOT, the ALJ had no further duty to investigate.").

Finally, an inconsistency between the DOT and VE's testimony does not require a remand unless there is not substantial evidence in the record to support the ALJ's decision. *See Rutherford*, 399 F.3d at 557. That is not the case here[5]. Because the ALJ identified one or more occupations which Green was capable of performing based upon the VE's testimony and the RFC determination, the ALJ's decision will be affirmed.

## V. <u>Conclusion</u>

The ALJ's findings are consistent with the record and are supported by substantial evidence. The Commissioner met his burden of production at step five by demonstrating that Green was capable of performing of one or more representative occupations that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Accordingly, Green's motion for summary judgment will be denied (Doc. No. 9), the Commissioner's motion for summary judgment will be granted (Doc. No. 11), and the administrative decision of the Commissioner will be affirmed.

An appropriate order follows.

---

[5] Notably, Green does not contend that he is incapable of performing the demands of the representative occupations or that the ALJ's RFC determination is not appropriately limiting. *See* Doc. No. 10.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICHOLAS GREEN,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 10-468
Judge Donetta W. Ambrose

## ORDER OF COURT

AND NOW, this _30th_ day of _Nov._ , 2010, this matter coming before

the Court on the Motion for Summary Judgment filed by the Plaintiff (Doc. No. 9) and the

Motion for Summary Judgment filed by the Defendant (Doc. No. 11), IT IS HEREBY

ORDERED that the Plaintiff's Motion for Summary Judgment is **DENIED** and that the

Defendant's Motion for Summary Judgment is **GRANTED.** Pursuant to 42 U.S.C. §405(g),

the administrative decision of the Commissioner of Social Security is hereby **AFFIRMED.**

        BY THE COURT:

        Donetta W. Ambrose,
        United States District Judge

cc:        All counsel of record